(No. 33586.

ALBERT E. DIETMAN, Appellee, *vs.* GEORGE L. HUNTER, County Clerk, *et al.,* Appellants.

*Opinion filed April 19, 1955.*

HARLAND D. WARREN, State's Attorney, and FREDERICK W. IRION, both of Ottawa, (JOHN J. BRESEE, of counsel,) for appellants.

BERRY & O'CONOR, of Streator, for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The supervisor of assessments of La Salle County increased the assessed value of approximately 1400 of the 7000 tracts of real estate in one of the townships of the county above the amounts returned by the township assessor, without giving notice and an opportunity to be heard to the owners of the property in question. The plaintiff owns one of the parcels of real estate affected, and for himself and on behalf of others similarly situated, he brought this action against the county clerk and the county treasurer, as *ex officio* county collector, to enjoin the extension and collection of taxes to the extent that they are based upon the increased valuations fixed by the supervisor of assessments. The defendants appeal from a decree which granted the relief sought.

No question is raised as to the propriety of injunctive relief or of a representative action under the circumstances here presented. The issues for determination are whether, under the due process clause of the constitution or under the provisions of the Revenue Act, notice to the taxpayer and an opportunity to be heard are required before the supervisor of assessments may increase the assessments

upon real property which have been returned by the township assessor.

The statutory plan for the assessment of real estate for taxing purposes in counties under 150,000 population contemplates that the assessment shall, in the first instance, be made by the township assessor. To achieve uniformity of assessments, it is provided that "The supervisor of assessments shall, on or before the first day of April in each year, assemble all assessors and their deputies for consultation and shall give such instructions to them as shall tend to a uniformity in the action of the assessors and their deputy assessors in his county." (Ill. Rev. Stat. 1953, chap. 120, par. 483.) It is also provided that after the township assessor has returned his assessments "The supervisor of assessments shall have the same authority as the township assessor to assess and to make changes or alterations in the assessment of property, and shall assess and make such changes or alterations in the assessment of property as though originally made. Such changes by the supervisor of assessments in valuations returned by the township assessor shall be noted in a column provided therefor, and no change shall be made in the original figures. All changes and alterations in the assessment of real property shall be subject to revision by the board of review in the same manner that original assessments are reviewed." (Ill. Rev. Stat. 1953, chap. 120, par. 576.) Thereafter, the assessment list is required to be published in a newspaper. ( Ill. Rev. Stat. 1953, chap. 55, par. 584.) After the assessment has been published, the taxpayer has a right to appear before the board of review and be heard as to the propriety of the assessment placed upon his property. Ill. Rev. Stat. 1953, chap. 120, par. 589(4).

The statute does not expressly require that the taxpayer be afforded a hearing before the supervisor of assessments revises the assessment returned by the township assessor. It does expressly require that the taxpayer be afforded a

hearing before the board of review, and such a hearing is required whether the assessment is that fixed by the township assessor or that revised by the county supervisor of assessments.

Due process requires that the property owner be given notice and an opportunity to be heard upon the valuation of his property at some point in the taxing process before his liability to pay the tax becomes conclusively established. A failure in this regard renders the tax void and uncollectible. (*Central of Georgia Railway Co.* v. *Wright,* 207 U.S. 127.) On the other hand, the taxpayer is not entitled to notice and an opportunity to be heard at each stage, or at any particular stage, of the assessment procedure. So it has been held that if the taxpayer may be heard upon the question of valuation in an action brought to collect the tax, (*Weyhauser* v. *Minnesota,* 176 U.S. 550, 555,) or in an action to restrain collection of the tax, (*Security Trust and Safety Vault Co.* v. *Lexington,* 203 U.S. 323,) due process requirements have been satisfied.

The requirements of due process are satisfied by a law which affords an opportunity to be heard with respect to assessments before the board of review. "But a law prescribing a time when complaints will be heard before the board of review is all the notice that is required. [Citation.] If the law secured to the defendant a hearing after the assessment was in fact made, of which he had notice by the statute, that would be sufficient." (*Carney* v. *People,* 210 Ill. 434, 440; *cf. Hagar* v. *Reclamation District No. 108,* 111 U.S. 710; *People* v. *International Salt Co.* 233 Ill. 223; *People* v. *Shirk,* 252 Ill. 95.) In the present case the opportunity of a property owner to be heard before the board of review with respect to the propriety of the assessment of his property is the same whether the assessment is that made by the township assessor, or the revised assessment made by the supervisor of assessments. It appears, therefore, that the requirements of due process have

been satisfied, and the express provisions of the statute have been complied with.

It is argued, however, that this case is governed by a different rule which was announced by this court in *People ex rel. Eisele* v. *St. Louis Merchants Bridge Co.* 268 Ill. 477, decided under the Revenue Act of 1898. There the township assessor valued the taxpayer's land at $50,000 and the improvements, a bridge structure, at $600,001, and made a debased valuation for purposes of taxation of $216,667, or one third. Without notice to the taxpayer, the county supervisor of assessments raised the total assessed value from $216,667 to $500,000, without disturbing the valuations of the land or the improvements. The court held that the increased assessment, being made without notice, was void, saying, "The statute contemplates changes and alternations of an assessment already made. The law is settled that notice to the property owner is jurisdictional and must precede any change or re-assessment of property after an assessment has once been made. [Citations.] The property owner may always learn from the township assessor the valuation of his property when made, and if the supervisor of assessments located at the county seat could increase the assessment without notice to the property owner, it would be necessary for him to keep the supervisor of assessments in sight until the moment of returning the books to the board of review, which would be most unjust and burdensome. To impose such a duty ought not to be attributed to the General Assembly if it can be avoided."

It is true, as defendants point out, that the result in the *St. Louis Merchants Bridge Company case* was based in part upon the fact that the supervisor of assessments departed from his statutory authority in that he had not separately assessed the land and the improvements, "but merely arbitrarily set down a lump sum as the amount upon which the appellant should pay taxes." (268 Ill. at 480.) In our

opinion, however, the primary ground upon which the opinion rests is the failure of the supervisor of assessments to notify the taxpayer of the proposed increase in his assessment and to afford him an opportunity to be heard. The defendants practically concede that the *St. Louis Merchants Bridge Company case,* if adhered to, is determinative of the present controversy, and they urge us to reconsider it.

As we have pointed out, the statute contemplates but one hearing with respect to the propriety of the assessment of real property. That hearing is before the board of review, and the statute which establishes the right to a hearing affords the notice required by due process of law. Since the rule stated in the *St. Louis Merchants Bridge Company case* requires an additional notice and an additional hearing, unnecessary under the due process clause and not required by statute, we turn to a consideration of that decision.

The cases relied upon in the *St. Louis Merchants Bridge Company case* are *Carney* v. *People,* 210 Ill. 434; *People ex rel. Rogers* v. *Centralia Gas and Electric Co.* 238 Ill. 113; and *People* v. *Shirk,* 252 Ill. 95. *Carney* and *Shirk* involved original assessments made by boards of review without notice to the property owners. *Centralia Gas and Electric Company* involved an increase in an assessment by a board of review without notice to the taxpayer.

An original assessment and an assessment increased by a supervisor of assessments stand upon a different footing than an assessment originally made or increased by a board of review. In the former there is a subsequent opportunity for a hearing before the board of review. In the latter, as was pointed out in the *Carney case,* if a board of review was not required to give notice of an original assessment it might make an original assessment up to the moment the books are returned to the county clerk, and at a time which would deprive the property owner of any hearing.

(210 Ill. at 441.) The same consideration is applicable to the increase of an assessment by a board of review.

Under the present statute and under that which was in effect when the *St. Louis Merchants Bridge Company case* was decided, the picturesque statement in that opinion to the effect that if prior notice of an increase in valuation by the supervisor of assessments was not required, the taxpayer would find it necessary to keep the supervisor in sight until the moment of returning the books to the board of review, is simply not correct. The supervisor's revision is not conclusive, but is subject to change by the board of review upon complaint of the property owner. Although section 26 of the Revenue Act of 1898 which was in effect when the *St. Louis Merchants Bridge Company case* was decided provided, just as does section 95 of the present Revenue Act, that "All changes and alterations in the assessment of real property shall be subject to revision by the board of review in the same manner that original assessments are reviewed," the court appears to have overlooked that provision.

For procedural reasons which are not here relevant, the *St. Louis Merchants Bridge Company case* was twice before the court. In the first case, *St. Louis Merchants' Bridge Co. v. Eisele,* 263 Ill. 50, the same conclusion was reached, but different authorities were relied upon. The line of cases referred to in the first case dealt with a method of assessment under which the taxpayer turned over to the assessor a schedule of his property and its value. And they held that when such a schedule has been accepted by the assessor, there could be no subsequent change in the assessment without notice to the taxpayer.

The line begins with *Cleghorn v. Postlewaite,* 43 Ill. 428, a personal property tax case decided in 1867. There the applicable statute provided that the taxpayer should deliver to the assessor a certified list of his personal property and its value. If the taxpayer's list was accepted by

the assessor, he was required to give the taxpayer a certificate showing the assessed value. If the assessor made any change or alteration in the assessment, after having given a taxpayer a certificate, he was required to furnish an additional certificate showing the increased assessment. The assessor increased Cleghorn's original assessment but failed to issue a new certificate. Although there was a plain violation of the statutory requirement of notice, the court rested its decision upon the ground that the increase in the assessment was void for lack of due process, saying: "When a party liable to taxes, makes out and delivers to the assessor a list of his taxable property, and which is accepted by the assessor without question, that officer has no power afterward, arbitrarily and of his own motion, to alter it, without first giving the party assessed notice."

The same thread runs through *Cox* v. *Hawkins*, 199 Ill. 68; *Huling* v. *Ehrich*, 183 Ill. 315; *First Nat. Bank* v. *Cook*, 77 Ill. 622, and *McConkey* v. *Smith*, 73 Ill. 313, although many of them could have been decided on other grounds. (Young, Taxpayers' Remedies, 1952 Ill. L. Forum, 248, 253-5.) That the basis of decision in these cases is the element of representation by the assessor and reliance by the taxpayer clearly appears from *Tolman* v. *Salomon*, 191 Ill. 202. There the assessor had, without notice, increased the value originally scheduled by the taxpayer. The taxpayer's action was dismissed, however, because he did not affirmatively allege that his valuation had been accepted by the assessor.

Neither by statute nor by custom does the taxpayer place his own value upon his real estate for taxing purposes. The element of reliance upon a valuation accepted by the assessor is absent in the assessment of real property. The real property owner first learns of his assessed valuation when he reads the published statutory notice after the supervisor of assessments has examined the assessor's books and turned them over to the board of review. For this

reason we are of the opinion that the authorities relied upon in the first *St. Louis Merchants' Bridge Company case* did not justify the broad rule announced in that case. By judicial pronouncement the second *St. Louis Merchants Bridge Company case* imported into our system of taxation a requirement which has neither constitutional nor statutory basis. Both decisions are expressly overruled.

Because the decree of the circuit court of La Salle County was based on these decisions, it must be reversed.

*Decree reversed.*